**FILED**

OCT 2 3 2014

# UNITED STATES DISTRICT COURT

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

for the

Southern District of Illinois

Tyrin N. Smith # B-78535 )
_____ )
_____ )  Case Number: 14 - 1150 - JPG
_____ )         (Clerk's Office will provide)
         *Plaintiff/Petitioner(s)*  )
                 v.            )  ☒ CIVIL RIGHTS COMPLAINT
Salbadore A. Godinez          )     pursuant to 42 U.S.C. §1983 (State Prisoner)
Richard Harrington            )  ☐ CIVIL RIGHTS COMPLAINT
Gail Walls                    )     pursuant to 28 U.S.C. §1331 (Federal Prisoner)
Angela Crain                  )  ☐ CIVIL COMPLAINT
         *Defendant/Respondent(s)*  )     pursuant to the Federal Tort Claims Act,
                               )     28 U.S.C. §§1346, 2671-2680, or other law

SCANNED AT MENARD and E-mailed
10-21-14 by MT 107 pages
 date      initials  No.

## I.  JURISDICTION

**Plaintiff:** Tyrin N. Smith - Reg. No. # B-78535

A.  Plaintiff's mailing address, register number, and present place of confinement. Menard Correctional Center
P.O Box 1000
Menard, IL. 62259

**Defendant #1:**

B.  Defendant Salbadore A. Godinez in his official & individual CAPACITY is employed as
                    (a)    (Name of First Defendant)

Director of the Illinois Department of Corrections
                    (b)         (Position/Title)

with I.D.O.C, 1301 Concordia Ct,
                    (c)    (Employer's Name and Address)

Springfield, Illinois, 62794-9277

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government?  ☒ Yes  ☐ No

If your answer is YES, briefly explain:  Employed by the state of Illinois as the Director of the Illinois Department of Corrections.

Dr. Fuentes,

Dr. Nwoabasi,

**Defendant #2:**

C.    Defendant **Richard Harrington/ in** is employed as
**his official capacity & individual capacity**
(Name of Second Defendant)

**Warden of Menard Correctional Center**
(Position/Title)

with **I.D.O.C, 711 Kaskaskia st,**
(Employer's Name and Address)
**Chester, Illinois, 62259**

At the time the claim(s) alleged in this complaint arose, was Defendant #2
employed by the state, local, or federal government?   ☒ Yes    ☐ No

If you answer is YES, briefly explain:

**Employed by the state of Illinois as the Warden of Menard Correctional Center**

**Additional Defendant(s) (if any):**

D.    Using the outline set forth above, identify any additional Defendant(s).

**DEFENDANT #3**

DEFENDANT **Gail Walls/in her official capacity & individual capacity**

**Acting Health Care Administrator**
POSITION / TITLE

WITH **I.D.O.C, 711 Kaskaskia.st, Chester, Illinois, 62259**
EMPLOYER'S NAME AND ADDRESS

AT THE TIME THE CLAIM(S) ALLEGED IN THIS COMPLAINT AROSE,
WAS DEFENDANT #3 EMPLOYED BY THE STATE, LOCAL, OR
FEDERAL GOVERNMENT?   ☒ YES    ☐ NO

(Rev. 7/2010)                                           2

IF YOUR ANSWER IS YES. BRIEFLY EXPLAIN:

Employed by the state of Illinois as the Acting Health Care Administrator at Menard Correctional Center.

DEFENDANT #4

DEFENDANT _____ Angela Crain/ in her official capacity & individual capacity

RN, Nursing Supervisor
Position / Title

I.D.O.C / Menard.C.C. 711 Kaskaskia.st, Chester, IL, 62259
EMPLOYER'S NAME AND ADDRESS

AT THE TIME THE CLAIM(S) ALLEGED IN THIS COMPLAINT AROSE, WAS DEFENDANT #4 EMPLOYED, BY THE STATE, LOCAL, OR FEDERAL GOVERNMENT?   ☒ YES      ☐ NO

IF YOUR ANSWER IS YES, BRIEFLY EXPLAIN:
Employed by the state of Illinois as the Nursing Supervisor at Menard Correctional Center

DEFENDANT #5

DEFENDANT _____ Doctor FE Fuentes, MD/ in her individual & official capacity

FE FUENTES, MD
POSITION / TITLE

I.D.O.C / Menard.C.C. 711 Kaskaskia.st. Chester, IL. 62259
EMPLOYER'S NAME AND ADDRESS

AT THE TIME THE CLAIM(S) ALLEGED IN THIS COMPLAINT AROSE, WAS DEFENDANT #5 EMPLOYED, BY THE STATE. LOCAL, OR FEDERAL GOVERNMENT?   ☒ YES      ☐ NO

IF YOUR ANSWER IS YES, BRIEFLY EXPLAIN:
Employed by the state of Illinois as a Doctor at Menard Correctional Center Health Care Unit.



DEFENDANT # 6

DEFENDANT   Doctor S. Nwaobasi, MD/ in his individual &
Official Capacity

S. Nwaobasi, MD
Position Title

I.D.O.C/ Menard C.C. 711 Kaskaskia St. Chester, IL, 62259
EMPLOYER'S NAME AND ADDRESS

AT THE TIME THE CLAIM(S) ALLEGED IN THIS COMPLAINT AROSE,
WAS DEFENDANT # 6 EMPLOYED BY THE STATE, LOCAL OR
FEDERAL GOVERNMENT?   ☒ YES   ☐ NO

IF YOUR ANSWER IS YES, BRIEFLY EXPLAIN:

Employed by the state of Illinois as a Doctor at
Menard Correctional Center Health Care Unit.



II.   **PREVIOUS LAWSUITS**

    A.   Have you begun any other lawsuits in state or federal court relating to
        your imprisonment?                  ☒ Yes     ☐ No

    B.   If your answer to "A" is YES, describe each lawsuit in the space below. If
        there is more than one lawsuit, you must describe the additional lawsuits
        on another sheet of paper using the same outline. <u>Failure to comply with</u>
        <u>this provision may result in summary denial of your complaint.</u>

       1.   Parties to previous lawsuits:
           Plaintiff(s):  Tyrin N. Smith

           Defendant(s):  Cook County Sheriff Fred McBryde

       2.   Court (if federal court, name of the district; if state court, name of
          the county): U.S District Court, 219 S. Dearborn .st
                        Chicago, IL, 60604

       3.   Docket number:  05-CU-01085

       4.   Name of Judge to whom case was assigned: JOAN B. GOTTSCHALL

       5.   Type of case (for example: Was it a habeas corpus or civil rights
          action?): Civil Rights Complaint pursuant to 42 U.S.C 1983

       6.   Disposition of case (for example: Was the case dismissed?  Was it
          appealed?  Is it still pending?): Settlement

       7.   Approximate date of filing lawsuit: 4-18-2005

       8.   Approximate date of disposition: April 2007

# PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or Federal court relating to your imprisonment?          ☒ YES    ☐ NO

B.   IF your answer to "A" is YES . . . . .

1.   Parties to previous lawsuits:
     Plaintiff(s): Tyrin Smith # B-78535

     Defendant(s): Salbadore Godinez, Richard Harrington, L. Phelps, K. Reichert, B. Anthony, T. Veath, J. Vasquez, A. Wills, L. Carter

2.   Court: U.S. District Court of the Southern District of Illinois

3.   Docket Number: 14-cv-372-JPG

4.   Name of Judge whom case was assigned: J. Phil Gilbert

5.   Type of Case: Civil Rights Complaint pursuant to 42 U.S.C 1983

6.   Disposition of Case: Dismissed For failure to state claim.

7.   Approxiamate date of filing lawsuit: 3-24-14

8.   Approxiamate date of disposition:    4-18-14



III.   **GRIEVANCE PROCEDURE**

A.   Is there a prisoner grievance procedure in the institution? ☒ Yes   ☐ No

B.   Did you present the facts relating to your complaint in the prisoner grievance procedure? ☒ Yes   ☐ No

C.   If your answer is YES,
  1.   What steps did you take? ON 5-20-14 I PERSONALLY GAVE MY GRIEV-ANCE TO COUNSELOR S. HILL IN THE PRESENCE OF C/O M. HANKS. 5-21-14 COUNSELOR KNUST TOLD ME SHE HAD IT AND WOULD FORWARD IT TO COUNSELOR C. MATHIS. WHOM SENT IT TO THE HEALTH CARE SUPV. ANGELA CRAIN 7-3-14 ANGELA CRAIN SENT ME A MEMO BUT DIDN'T RE-TURN MY GRIEVANCE OR INFORM ME OF WHERE IT WAS SENT.
  2.   What was the result? 7-29-14 COUNSELOR C. MATHIS TOLD ME THAT HE MADE A MISTAKE BY NOT COPYING MY ORIGINAL GRIEVANCE BEFORE SENDING IT TO ANGELA CRAIN, AND THAT SHE SHREDDED THE ORIGINAL THEREFORE MY GRIEVANCE WAS LOST 9-8-14 I RECIEVED A MEMO FROM COUNSELOR MATHIS CONFIRMING THIS.

D.   If your answer is NO, explain why not.



E.   If there is no prisoner grievance procedure in the institution, did you complain to prison authorities? ☐ Yes   ☐ No

F.   If your answer is YES,
  1.   What steps did you take?



  2.   What was the result?



G.   If your answer is NO, explain why not.



H.   Attach copies of your request for an administrative remedy and any response you received.  If you cannot do so, explain why not.

IV.     **STATEMENT OF CLAIM**

A.      State here, as briefly as possible, when, where, how, and by whom you feel
your constitutional rights were violated.  Do not include legal arguments of
citations.  If you wish to present legal arguments or citations, file a separate
memorandum of law.  If you intend to allege a number of related claims,
number and set forth each claim in a separate paragraph.  If your claims
relate to prison disciplinary proceedings, attach copies of the disciplinary
charges and any disciplinary hearing summary as exhibits. You should also
attach any relevant, supporting documentation.

Plaintiff contends that his 8th Amendment Constitutional rights under the U.S constitution prohibiting cruel and unusual punishment when prison officials acted with deliberate indifference towards inmates medical needs, "serious" medical needs, which ultimately led to plaintiff escourted to several out-side hospitals that ended in plaintiff having incision surgery. Plaintiff will like to state that he did exhaust all remedies, administrative remedies that were "available" to him. The grievance that's attatched with this complaint is a "copy" and NOT THE ORIGINAL grievance due to Counselor C. Mathis and Nursing Supervisor (Defendant # 4) Angela Crain losing/destroying it. (See ex-hibit #105). Plaintiff administrative remedies has suffered due to prison officials here at Menard C.C taking an unfair advantage, rendering my remedies unavailable by not First responding to my grievance in a timely manners and ultimately "losing" it! Plaintiff is submitting this "copy" of the original grievance in good cause although Menard Prison officials has marked it as being untimely. (See exhibit #31-55). Plaintiff will state that On 5-20-14 (40 days after writting grievance on 4-18-14) he personally hand delivered the grievance to Counselor S. Hill, in the presence of Officer M. Hanks whom was plantiff's assigned gallery officer in N2 cell house. Plaintiff would like to state that the reason he waited 40 days to deliver grievance to counselor was because he wanted no confusion because in the past plaintiff had sent previous grievances in the institutional mail that were lost/destroyed/never received by counselor. Plaintiff met the

institutions' require ment of grievance being filed within 60 days of the incident | action ... in this case, 60 days from the conclusion of my Surgery which was 4-4-14. Plaintiff awaited Counselor S. Hill to make her rounds, the date of 5-20-14 was the day she came. Counselor S. Hill accepted my grievance yet told me that she would forward | give it to my "new" counselor who name was Counselor Knust. The very next day, 5-21-14 I personally spoke to Counselor Knust when she made her rounds to N2-4 gallery to speak with us inmates. After realizing that I would be leaving to a new cellhouse on 5-27-14 (SEGREGATION RELEASE) she told me that she "did" receive my grievance from S. Hill the day before, and that she will forward my grievance to Counselor C. Mathis, whom is the Counselor in West house-8 gallery where I was sent to on 5-27-14. On 5-28-14, the day after I reached West cell house, cell 818 I sent Counselor Mathis a letter asking him did he receive my grievance from Counselor Knust. I received no response. On 6-13-14 I seen Counselor Mathis and asked him about my grievance dated 4-18-14 and he told me that "medical grievances are usually forwarded to the Health Care Unit. At this point, Counselor Mathis, whom was my assigned counselor never gave me confirmation of if he received my grievance from Counselor Knust, if it was sent to H.C.U, or did he contact Knust to find it. I must add that Counselor Mathis had recently been been a nurse for many years and had just began doing counselor work for maybe 2 weeks. On 6-17-14 I seen Counselor Mathis at my cell which now was W-814 and he got frustrated and walked off because I was persistant in my questioning | inquiring about my grievance. On 6-23-14 plaintiff wrote Case Worker Supervisor Lawrence and the C.A.O (Warden) about assisting him of finding, or having Counselor Mathis track down his 4-18-14 medical grievance. Plaintiff never received a response from either of them. Finally, on 6-25-14 plaintiff got a memo (see exhibit #98) from Counselor Mathis stating "he contactacted Angela Crain at H.C.U. and she was well aware of, and reviewing my grievance". this was plaintiff's first confirm-

(11)

-ation that H.C.U actually had grievance. Counselor Mathis didn't say or specify "how" "when" Angela Crain received grievance. On 7-3-14 plaintiff got a memo from Angela Crain (See exhibit #99) stating she reviewed grievance, etc--- however, she made "no" mention of "WHERE" grievance was sent once she finished with it. This was plaintiff's original grievance that he planned to exhaust to the end of the administrative remedy chain. On 7-3-14 plaintiff wrote her and Counselor Mathis asking "where" was his grievance so he can continue to exhaust his administrative remedies. To prevent either of them saying in the future that they never received my letters, I hand delivered them to Ms. B. Thomas whom is my mental health doctor, and asked her to personally place the letters in Angela Crain, and Mathis's mailbox. She did that, and wrote me "assuring" me that she delivered them. (See exhibit #100, 101). On 7-29-14 plaintiff spoke to Counselor Mathis as he made his rounds. Counselor Mathis told plaintiff " I just began this counselor job, and I messed up. I was supposed to copy your original grievance before sending it to Angela Crain. I failed to do that and I think she shredded the grievance as they usually do, assuming the counselor had made a copy". Counselor Mathis apologized to plaintiff and told me that he'd contact Angela Crain, and if she doesn't have the grievance anymore, he'll write me. Plaintiff then informed Counselor Mathis that he had a copy of the original grievance. Counselor Mathis, on 7-29-14 signed it and put the date of 6-18-14. Plaintiff asked Mathis why did he put the wrong date, and he stated "because I don't remember the exact date I gave it to Angela Crain. This was the grievance that plaintiff "had" to send to the grievance officer (Linda Carter) because the original was gone. Ultimately this was the grievance Linda Carter says is out of time frame. Her claim is that plaintiff didn't submit the grievance to her within 60 days of the counselors response, which says 6-18-14. But what she failed to consider was the fact that I "NEVER" received my original grievance back. if I had, when Angela Crain was done, I would have been →

Well within the 60 day time frame. Plaintiff must get his grievance to a counselor within 60 days of incident. he did. Grievance was written on 4-18-14. given to Counselor S.Hill on 5-20-14 (32 days). Secondly, plaintiff must get the grievance to the grievance officer (Linda Carter) within 60 days of the date of which the counselor responsed. In this case counselor "never" responsed because grievance was lost and never returned to plaintiff. There was no "responsed grievance to send the grievance officer. Had plaintiff received his original Grievance "with" Angela Crains 7-3-14 memo. he would have been able to send it to the grievance officer in time. The grievance officer rendered plaintiff grievance "out of time frame" because she went off the incorrect date of 6-18-14, that Mathis wrote/signed on the copied grievance on 7-29-14. When Plaintiff sent this grievance to grievance officer on 8-24-14. he informed her ~~off~~ of all this (see exhibit #102,03) and asked her to contact Mathis, she obviously didn't check into it because she rendered my grievance untimely. Rewinding a little, plaintiff would like to state also that on 8-3-14 he wrote Mathis inquiring whether he contacted Angela Crain about the grievance. once again I ~~sent~~ sent it to Ms.B Thomas to deliver, she wrote me back on 8-7-14 saying she received the letter but the letter for Mathis wasn't there (see exhibit #101). After no response, or not receiving original grievance from Counselor Mathis or Angela Crain. Plaintiff sent copied grievance, with exhibits and memo to grievance officer (See exhibits #102). On 8-28-14 plaintiff was moved to W-721 where his new assigned counselor was Counselor Rowold, yet plaintiff wrote Mathis informing him of his new location and to please forward original grievance if/when he recovers it. On 9-9-14 plaintiff received "copied" grievance that he sent Grievance officer on 8-24-14. She denied grievance stating it was untimely (see exhibit #55). Finally, on 9-11-14 plaintiff received memo from counselor Mathis (see exhibit #105) admitting/confirming that "I did make a mistake on the one grievance

that I sent the "original" to H.C.U and did not have a copy. This is in his words, this "mistake" of his led to plaintiff's grievance being lost, and rendering his administrative remedies exhausted. Plaintiff intended on sending his grievance to the grievance officer, but he never got it back because Counselor Mathis didn't copy the original, and Angela Crain destroyed it.

On the grievance officers 9-8-14 memo (see exhibit #10₄) she wrote that " issue will not be addressed further". There's no more administrative remedies available to plaintiff which now brings him to this complaint.


Plaintiff states that on 4-18-14 he was taken to SIH hospital in Murphysboro, Illinois to see Dr. Brewer whom performed surgery on him on 4-4-14 for a prolapsed / thrombosed hemorrhoid. The 4-18-14 visit was a post-surgery check-up to assure I was recovering / healing properly. Dr. Brewer examined plaintiff in the presence of c/o Frenchy and c/o Sheilds and said that plaintiff was healing fine, with the exception of a little swelling, and that I "must" implement more fiber in my diet to prevent this problem / condition from re-occurring. Dr. Brewer wrote plaintiff a prescription for a high fiber diet, and colace. Plaintiff is filing this complaint / suit charging all the defendants with medical malpractice / deliberate indifference which lead to the violation of his 8th Amendment right. Plaintiff was forced to suffer and deal with this extremely painful condition for an extra 2 plus years because they refused to authorize plaintiff to have needed surgery because they claimed "Menard doesn't have the money to send you out for surgery, and / or security reasons". This was told to plaintiff by (Defendant #6, Dr. Nwaobasi). Neither of those 2 excuses can justify their inaction. Instead, they both chose to ignore this problem, as they witnessed it get worse and worse, and continued to simply prescribe plaintiff the same medications / creams that was proven not to be effective from 2010-2012. The 8th Amendment to the U.S. Constitution gives convicted inmates the right to "ADEQUATE" medical care. Because inmates lose their ability to obtain medical care of their choosing, officials have a DUTY to provide adequate medical care. The denial of adequate medical →

care I've received since 2012, when this hemorrhoid became prolapsed, re-sulted in 2 plus years of pain and suffering which no one would suggest would serve any penological purpose. Also, officials may not deny you medical care on the grounds that it makes their jail or prison safer or more secure, in addition, prison officials, doctors can't ignore a problem once it's brought to their attention. They may try to argue that the prison does not have enough money to fix problems, but that's not accepted. These are the very 2 reasons Defendants #5 and #6 gave plaintiff as to why they're refusing to authorize/order plaintiff to have needed surgery when they both seen this hemorrhoid at it's worst state in 2012. They were aware, from plain-tiff medical records and previous visits, that plaintiffs medical condition had began in 2010 as a regular, small hemorrhoid that was internal. With inadequate medical care, it constantly got worser, yet they failed to prescribe a better, more effective medication/procedure. Once plaintiff's hemorrhoid advanced to the severe stage of prolapsed/thrombosis, they failed to auth-orized surgery in house, or outside for over 2 years. And even then, it was ordered by a new doctor at the prison (Dr. Trost) whom ordered plaintiff to be "immediately" sent to outside hospital upon viewing it for the "first" time. Prison officials violate the Constitution when they act with deliberate in-difference to an inmates "serious" medical needs. In this complaint plaintiff will bring forth facts, exhibits to "prove" Menard's medical staff acted with deliberate indifference, plaintiff will also show "objective" and "subjective" evidence. I, plaintiff understands that there are 4 elements he must prove to show deliberate indifference are.. ① SERIOUS MEDICAL NEED, ② OFF-ICIALS KNOWLEDGE OF NEED, ③ FAILURE TO RESPOND REASON-ABLY BY PROVIDING ADEQUATE MEDICAL CARE, ④ OFFICIALS DELIBERATE INDIFFERENCE CAUSED PLAINTIFF INJURY AND/OR LIKELY TO INJURE IN THE FUTURE. To support element #1, plain-tiff states that this is/was a "serious" medical need, and that 4 seper-ate doctors outside of the prison said that plaintiff was supposed to →

BEEN" had surgery for this condition "years" ago. This was said by Menard's new Doctor, Dr. Trost, whom, thankfully for plaintiff, was the doctor plaintiff was examined by on 3-24-14 that "FINALLY" authorized plaintiff to be sent to an outside hospital because this medical condition was too advanced to be treated at the prison. On that day, 3-24-14, within 10 seconds of viewing this condition, Dr. Trost immediately told the sergeant at H.C.U that plaintiff had to be "immediately" sent to Chester Memorial Hospital. The 2nd doctor plaintiff was examined by that day, Dr. Vorbich, examined plaintiff at Chester Memorial on 3-24-14, concurred with Dr. Trost and "immediately", in the presence of C/o Krause, C/o Lafonz, said " I, plaintiff "MUST" have surgery! In fact, plaintiff's condition was so advanced, serious, that Dr. Vorbich was gonna perform surgery "that day". Plaintiff was prepped for surgery, given an I.V and screened to be given anethesia, etc-- However, the doctor (Vorbich) had a last minute prescheduled surgery to perform. The 3rd doctor, on 3-25-14 that examined plaintiff was Dr. Hinze at Chester Memorial whom is employed by Randolph County Surgical Associates (See exhibit#92). Within 30 seconds of examing plaintiff in the presence of C/o Young and C/o Bert, said that plaintiff needed to have surgery "immediately". He, Dr. Hinze, knew from experience the level of pain the plaintiff was experiencing with this particular injury and prescribed the plaintiff the powerful pain medicchon, Vicodin (See exhibit #92). Yet, Menard's staff refused to give it to plaintiff, and continued to prescribed plaintiff Ibuprofen, which is recommended in medical books (See exhibit #93), and in the health care field "NOT" to be given to patients with hemorrhoids because it "fosters bleeding" in hemorrhoid. The 4th doctor that concured that this was a serious condition and "NEEDED" surgery was Dr. Brewer, the doctor that eventually performed surgery on plaintiff on 4-4-14. Plaintiff initially seen Dr. Brewer on 4-2-14 at SIH hospital in Murphysboro (See exhibit #4). and within seconds of examining plaintiff in the presence of C/o J. Hart and C/o J. Hood, he said that plaintiff needed surgery immediately, which he scheduled, and performed on plaintiff on 4-4-14 at the Physicons Surgical Center in Carbondale, Illinois. That's a total of 4 doctors, outside of the 2 defendants (Dr-

Fuentes, Dr. Nwaobasi) that plaintiff brings this complaint against, 4 doctors whom all immediately agreed that plaintiff had a "serious medical condition that "needed immediate surgery" to cure. This condition was serious "before" surgery was performed. For 2 plus years, because it was a prolapsed hemorrhoid which protrudes painfully out of the anal cavity, extremely painful, and bleeds during bowel movements, it was blood clotted, exposed to infection and could have burst at any moment. The lower courts has defined "serious" medical need when it has been diagnosed by a physician(s) as mandating treatment (Just proven with 4 aforementioned doctors) statements) actions) and ... is so "obvious" that even a lay person would easily recognize the necessity for a doctors attention. In this case, there was a swollen, bloody, thrombosed hemorrhoid protruding close to 2 inches out of plaintiffs anal cavity. I'm sure even a lay person would know that some cream and ibuprofen would be drastically ineffective at this stage and would recommend surgery for the plaintiff. Due to Defendants #5 & 6 not ordering surgery / outside hospital, it resulted in insignificant injury and unnecessary and wanton infliction of pain. This condition affected plaintiffs sleeping, walking, sitting because it was so painful, excruciating pain to the point plaintiff had to take medication (ibuprofen) that he knew was counter productive, yet he "had" to take it because he had no other options. Plaintiff was never given any gauze or cleaning solutions to clean hemorrhoid to prevent infection. Plaintiff was forced to simply use soap, towel and use these unsanitary prison sinks. This condition was serious. In the physicians guide book (See exhibits #70-73) it states the following ..."(External hemorrhoids) lie within the anus and is usually painful. If external hemorrhoids prolapse (PLAINTIFF'S CONDITION) to the outside, you can "see" it and feel it (Plaintiff would like to state that defendant #6 first seen/knew hemorrhoid at advanced prolapsed stage on 6-18-11 (See exhibit #66) medical records of plaintiff. Medical staff also seen hemorrhoid becoming external on 3-2-11 visit to H.C.U, and seen it bleeding on 3-23-11 visit to H.C.U (See exhibit #64, Plaintiffs medical record). The physicians book continues to state... " Blood clots sometimes (it did) form within prolapsed external hemorrhoids, causing an extremely pain-

ful condition caused thrombosis (it was confirmed by 2 doctors that this is what plaintiff had). If a external hemorrhoid becomes thrombosed, it can look rather frightening, turing purple, or blue (it did) and possibly bleeding (it did). If the pain is unbearable, which it was for plaintiff, a doctor can REMOVE it during a visit". Defendants #5,6 never made the proper decision concerning plaintiff's condition, which lead to 2 plus more years of pain and suffering, worry, and fear! Element #2, OFFICIALS ACTUAL KNOWLEDGE OF SERIOUS MEDICAL NEED - Most of that element is I was just proven/explained in Element #1, in addition to that, plaintiff would like to state that he Arrived at Menard C.C on 6-16-10, he was first seen by Menard's medical staff for a regular, small, internal hemorrhoid on 7-26-10 (See exhibit #57) Plaintiff informed them that he'd had this problem for maybe 7-8 months. That was, to plaintiff's knowledge, the first time Menard's medical staff became aware of this condition. For the past couple months plaintiff has been attempting to get copies of his "full" medical records, all to no avail.

At the moment, all the medical records plaintiff was able to obtain covers the dates of April 2009 — November 2011. Between that timeframe plaintiff visited H.C.U (Health Care Unit) at Menard 12 times for this condition between 7-26-10 and 11-2-11. Each time, plaintiff informed medical staff and defendants 5 and 6 that it wasn't getting better, but in fact getting worse. He informed them that the medication (Dibucaine Cream/Suppositories) was ineffective. VISIT #1. 7-26-10 plaintiff reported hemorrhoid, examined by the CMT. Diagnosed as " small hemorrhoid " wasn't referred to a doctor, prescribed dibucaine cream, instructed to drink at least 64 ounces of water daily, which plaintiff followed. Plaintiff was also told to avoid straining which he adhered to. Condition wasn't improving in 4 months, so he put in a request to be seen again. VISIT #2  12-21-10 plaintiff informed them that his condition didn't improve, that the dibucaine and colace was not working at all. He informed them that the instructions on the box of dibucaine clearly states " STOP USE IF CONDITION PERSISTS AND/OR YOU HAVE RECTAL BLEEDING ". Yet, Menard's doctors continued, for "4 YEARS" to prescribe/give plaintiff dibucaine. They even ignored a

→

Prescription order from doctor Hinze (See exhibit #2) to give plaintiff a better, more effective cream. VISIT #3  12-29-10 plaintiff was seen by doctor at H.C.U. told them about the problem, previous medication wasn't working, he was examined, doctor felt internal hemorrhoid at 12 O'clock, prescribed him suppositories in addition to Colace and Dibucaine. Condition didn't improve in 2 months, plaintiff put in for H.C.U again. VISIT #4. On 2-9-11 plaintiff went to H.C.U, examined, nothing ordered. VISIT #5. On 2-12-11, plaintiff was seen by nurse, informed them about pain, blood in stool, hemorrhoid not resolving, meds ineffective. Ordered to have prostate ultrasound done, which took place on 2-14-11. Up to this point, plaintiff states that medical staff tried to supply meds to help, and ordered ultra sound, but it doesn't negate the fact "THE CONDITION WAS GETTING WORSE" and therefore the medical care was supposed to improve/advance. VISIT #6 On 3-2-11 plaintiff was seen by defendant #5. Dr. Fuentes, seen/documented "external hemorrhoid", nothing different was prescribed. Pain was getting worse (See exhibit #62) bleeding more frequent so plaintiff once again submitted request to be seen by medical staff. VISIT #7 3-22-11 plaintiff refused to 'again' for the 5th or 6th time pay $2 because this was a preexisting condition that only existed because they failed to prescribed the proper meds, or order a procedure to cure plaintiff. Plaintiff wasn't seen because of this. VISIT #8 Plaintiff was called to be seen by defendant #6 for his asthma condition, plaintiff told him, Dr. Nwaobasi about bleeding hemorrhoid, nothing was done. VISIT #9 On 6-4-11 plaintiff was seen by medical staff, informed them that condition was getting worse, they, once again, prescribed plaintiff same ineffective meds. See medical records enclosed! VISIT #10. Plaintiff visited H.C.U on 6-18-11. was examined by defendant #6. This is when plaintiffs hemorrhoid advanced to the stage of prolapsed, where it swelled up to 2 inches and protrudes from the anal cavity, bleeding and excruciating pain. At this stage, Menard medical staff had known of this hemorrhoid for over a year, had seen/examined plaintiff many times and seen condition wasn't improving, yet they continued to give plaintiff the same ineffective meds, cream and refused to prescribe/order to correct medication/surgery for plaintiff. this lead plaintiff to 34 months of pain and suffering until surgery was perf-

→

of med at a outside hospital on 4-4-11. VISIT #11 Once again, plaintiff visited the H.C.U for this condition on 7-25-11, he was seen by defendant #6, whom ~~FLOOT~~ examined plaintiff and reported bleeding, pain, yet nothing different was done, recommended or ordered in terms of treatment. This is when defendant #6 told plaintiff that "menard went authorize me to have surgery due to financial and security reasons", I asked him to at least recommend it to his superiors, he told me "NO, it would be a waste of time". VISIT #12 On 10-17-11 plaintiff seen the C.M.T, informs them of condition, paid $2 again, was referred to see the doctor "again", Colace (stool softener) was renewed, yet "NOTHING" prescribed/order for this now painful, bleeding, pertruding, prolapsed hemorrhoid. Once again, plaintiff would like to state there are/were many more visits to the H.C.U/Doctor/CMT between 10-17-11 and 3-24-14, yet, plaintiff havent been granted his request to receive a copy of all his medical records from June 2010-March, April 2014. Plaintiff has even tried to pay for the copies by sending a request to H.C.U and records with a signed money voucher attached. Plaintiff did this twice, in February 2014 and in March 2014, plaintiff never received a response from neither party. To further support ELEMENT #2 plaintiff states that once defendant #5 (Dr. Fuentes) and defendant #6 (Dr. Nwaobasi) seen the prescribed meds/creams werent effective, and hadnt been effective for year plus plaintiff was using them, and witnessing plaintiff's condition getting "worse" they, being medical professionals knew they were supposed to adjust their treatment. Once this hemorrhoid become prolapsed after a year of ineffective treatment, they were supposed to advance/order something effective, not continue to send plaintiff back to his building with a painful, bleeding, prolapsed hemorroid pestruding 2 inches out of his body. From the time plaintiff's condition advanced from a regular small internal hemorrhoid (2010) to the time it become prolapsed (6-18-11) was a year of ineffective treatment. Once the condition got clearly worse, one would think something would be done, yet even seeing this horrific condition, Defendants #5 and #6 continued to do nothing but the "same old routine of giving plaintiff ineffective treatment"! From the time the hemorrhoid become prolapsed 6-18-11, until 3-24-14 (33 MONTHS) plaintiff medical care was provided essentially by defendants #5 and 6, which was so grossly incompetant, inadequate, as to shock the concious or to be →

intolerable to fundamental fairness. In this case the "care provided" was glaringly, inexcusably bad! If officials intentionally decides to take a easier or cheaper but much less "effective" coarse of treatment, he/she may be deliberately indifferent. Finally, treatment that is "so cursory as to amount to no treatment at all VIOLATES THE CONSTITUTION". This is the case here, because from that time on nothing different/effective was given/ordered to cure/rid plaintiff of this ailment. For 2 plus years after condition advanced to the terrible stage of being prolapsed, plaintiff was prescribed the SAME meds/creams that was proven to be ineffective. And this is how a small internal hemorrhoid went to become "external", then "prolapsed", and ultimately "THROMBOSIS".!! Officials knew, from medical school/training that without "adequal care, a hemorrhoid would advance, and once it reached a certain stage, those medications/creams wouldnt be effective, therefore, officials knew that a substantial risk of serious harm would result from their "failure" to carry out treatment properly. This caused plaintiff excruciating pain, and contributed to condition getting worse. Once again plaintiff would like to state that of the 4 meds/creams he was prescribed (Colace, Dibucaine Cream, Suppositories, and Ibuprofen). One of them (Colace) isnt for hemorrhoids, its only a stool softner. And 2 of the other 3 (Ibuprofen and Dibucaine) plaintiff wasnt supposed to be given, cause as stated by doctors and in doctors medical book (See exhibit #73) Ibuprofen fosters bleeding and is "not" to be given to hemorrhoid patients. And the directions on the dibucaine box/tube clearly states "to discontinue if condition doesnt improve/worsens, yet plaintiff was prescribed/given it for 4 years!! ELEMENT #3 was just explained in element #2 as well. Now to ELEMENT #4- CAUSATION & IN-JURY, simply put, Menard's medical staff, defendants #5 and #6 are both guilty of causation by not ordering proper/effective treatment/care or recommend plaintiff to be seen by another doctor outside the prison. They didnt even notify their superiors of this problem to plaintiff's knowledge to see if something better could be done/ordered/recommended. This is/was the "cause" for a small internal hemorrhoid, becoming a bloody, painful, protruding prolapsed hemorrhoid/condition that eventually "had" to be ⟶

Surgically removed on 4-4-14. This is something defendants #5 and 6 "knew" or should have known back in 2011 when it first became prolapsed. With ㉑ all the aforementioned information, plaintiff is confident he's shown/proven his rights were violated and defendants are responsible for this, particulary de- fendants #5 and 6 who've shown deliberate indifference, and plaintiff has shown, proven both "Objective" and "Subjective" evidence. Plaintiff's 8th Amend- ment right against cruel and unusual punishment has been violated. In this sit- uation, officials did not respond reasonably. Not ordering/recommending procedure to rid/cure plaintiff of this, as Dr. Trost "FINALLY" did on 3-24-14, is proof that defendants 5 and 6 ignored problem and didn't care to do their job and do what was necessary for a patient that clearly had a medical condition that need- ed immediate help/treatment. Yet they practically did nothing for over 2 years but give/prescribe ineffective/mis-applied meds and if it weren't for the plaintiff finally being able to see a doctor (Trost) whom was just hired, which is the doctor at the prison that examined plaintiff on 3-24-14 and within 10 seconds said/recommended/authorized plaintiff to "immediately" be taken to a outside hospital for surgery because the hemorroid had clearly pass the stage where anything could be done in the HCU. What doctor Trost did on 3-24-14, is what defendants 5 and 6 could have/should have done 33 months prior, be- cause what Dr. Trost seen for 10 seconds on 3-24-14, defendants 5 and 6 has seen/been seeing for years, yet decided to do nothing. Defendants 5 and 6 had has the same power/authority, if not more than Dr. Trost because they had senority over him. In addition, to add insult to injury, defendants 5 and 6 told plaintiff that they "think" I needed surgery, but it didn't matter what they said because security reasons wouldn't allow for me to be sent off arounds." "Cost" nor "Security" is a defense to Constitutional Liability! Plaintiff would like to state that the 4-18-14 grievance attached with this com- plaint "isn't" his first time attempting to grieve this issue, and ultimately bring to the courts attention, however, plaintiff was unable to exhaust his admini- strative remedies back then because staff at the prison sabotaged his grie- vance process. In the past, 2012, during this medical ailment, plaintiff not ⟶

not only seeked relief from medical staff but also through the grievance pro-
cess, all to no avail. In Summary, to give a clear understanding, plaintiff will state that he arrived at M.C.C on 6-16-2010, was first seen by
medical staff for this hemorrhoid on 7-26-10. For the next year, the condition
only got worse. After 13 months of no improvement or adequate medical care
plaintiff filed a grievance on the issue on 8-8-11. (See exhibit #4). On 8-26-11
Counselor Summers ~~grievance officer~~ responded (See exhibit #14) instructing plaintiff to read attached
memo from H.C.U administrator Gail Walls (See exhibit #7b). Her response was
dated 8-31-11 and stated "Plaintiff has been seen multiple times since 2010...
there's no indication by health care professionals that I have a need for
surgical intervention at this time." Plaintiff would like to say that it's ob-
vious she either didn't review my medical records or just didn't care be-
cause if she had, it was clear this problem wasn't being healed after al-
most 13 months of treatment. Secondly, she'd seen it was a ~~reg~~ regular
internal hemorroid on 7-26-10, that had advanced to a prolapsed hem-
orrhoid on 6-18-11, 2 months before she addressed this issue. All of this
info is in my medical records (See exhibits #56 - #69). This "condition"
that she said didn't need "surgical intervention", was the exact same con-
dition Dr. Trost seen on 3-24-14 when he "immediately" sent plaintiff to
Chester Memorial Hospital off grounds. Even then, grievant/plaintiff "tried" to
appeal the decision On 10-11-11 (See exhibit #9), which is required as part
of exhausting remedies, but til this day, plaintiff never got response back
from Springfield. Plaintiff's trust fund account/transactions from that time
will show he sent out legal mail/appeal. Still with the prolapsed hemorrhoid,
plaintiff had to keep trying to get help, so he filed another grievance on 9-9-11
(See exhibit #77) and requested the same relief. At this point plaintiff was
simply trying to get a grievance exhausted so he could bring this complaint
to the courts, but he was unsuccessful because each time, staff sabotaged his
grievance procedure. Even now, his grievance was "admittedly" lost/destroyed/
mishandled by staff. On 9-16-11 grievance officer Traci Harrington denied →

plaintiff's grievance stating the "exact same thing as trail would" (See exhibit # 79). "There is no indication that plaintiff has need of surgical intervention". The C.A.O defendant # 2, Conjured. Once again, plaintiff appealed but to this day, has not received a response. Between that time, and 2014, all plaintiff had at his disposal to get help was to continue to put in request to see the same in-effective doctors, or file grievances in hopes he'd be allowed to exhaust his administrative remedies. Plaintiff medical records between July 2010 and April-2014 will show/prove plaintiff continued to seek help. It got to a point where plaintiff's grievances started to "vanish", "not get answered", "not received" by counselors. Plaintiff took detailed notes/record of all this (See exhibit # 83)

After months of no relief, filed/sent another grievance on 6-26-12 and sent to the C.A.O, defendant # 2 as an "EMERGENCY GRIEVANCE", because at this point, the pain was unbearable, the hemorrhoid was at it's worst stage. By the time 7-21-12 arrived, plaintiff hadn't received a response from no one. Once again plaintiff wrote ANOTHER grievance on 7-21-12 and sent to Counselor Rowold whom was plaintiff's assigned counselor, as well as sending a copy to the A.R.B as a witness that he, plaintiff filed/tried to file this grievance. Plaintiff never received a response from no one. At this point plaintiff knew/felt someone was intentionally interfering with his grievance procedure, so on 8-5-12 plaintiff wrote a letter to the Uptown People's Law Center seeking help/advice as to find out how to maneuver ground staff sabotaging my grievances (See exhibit # 80). Plaintiff sent them U.P.L.C, a copy of his grievance and informed them of what Menard's staff were doing as far as interfering with his grievance/administrative remedies. They, U.P.L.C wrote plaintiff back (See exhibit # 80) on 8-28-12 with my grievance and said that I had to file it myself. Plaintiff was attempting to have them, U.P.L.C send the grievance to the counselor for him because his previous 2 grievances to her "Vanished" "never got to her" even though plaintiff placed them in the institutional mail system. ⟶

From that point on, all plaintiff could do was hope & pray some thing would go in his favor, and just continue to put in request for health care, continue to pay to be seen for this hemorrhoid. Refusing to give up, and living everyday in pain, once again plaintiff put in a request to be seen by a doctor, this was now September 2013. By this time, plaintiff had received legitimate doctors/medical book info on hemorrhoid (See exhibit #70-73). I wanted/needed to be equipt with legit info on my condition so I could relay this to the doctors, because up to this point, they knew plaintiff wasnt a medical expert and they could tell me anything, because all they did was continue to tell me "there's nothing more we could do". After receiving this info, plaintiff "knew" what he already assumed... that there were other medications and procedures that could be done to cure this problem. He now knew that for 3 years defendants #5 and 6 intentionally refused to do/recommend something effective. Plaintiff also learned that he wasnt supposed to be taking ibuprofen which defendants #5 and 6 had been prescribing plaintiff for years. (See exhibit #73, page 467). Plaintiff copied, verbatim (See exhibit #85) info, treatment, procedures, etc... out of this book to take with him when seeing the doctors/nurses. A prolapsed, thrombosed hemorrhoid which plaintiff had, could get even worse and lead to color-ectal cancer. This troubled plaintiff. For pain, the medical book, states that hemorrhoid patients "should not take ibuprofen, which fosters bleeding" (See exhibit #73, page 467). It continues to state "a high fiber diet is needed" which plaintiff requested, but was never granted. Under the category of "treatment" to cure/end a thrombosed hemorrhoid it list several possible ways, none of which defendants "never" once recommended/ordered. "#1. Injection with phenol is stated to be a 90% success rate. #2. Banding (rubberband ligation) gives patient a 70% success rate. #3. Coagulation/cauterization (which plaintiff finally received on 4-4-14) is most useful for prolapsed hemorrhoids. Once plaintiff was equipted with this info, he took it with him to every health care visit from mid 2012. Once he read those things to defendants #5 and 6, they both kept telling plaintiff that "Menard doesnt do surgery, and although you need it, they won't send →

(25)

you off grounds" Plaintiff put in to be seen in Sept 2013, was called and seen/examined by Dr. Shearing on 9-6-2013. Plaintiff relayed all the info he now knew pertaining successful treatment for this hemorrhoid, his response was "I dont think Menard will approve surgery." Once again plaintiff wrote a grievance on 11-5-13 and sent it to the C.A.O as an "EMERGENCY". By 12-5-13 plaintiff hadnt got a response, so he wrote counselor Hill, grievance off-icer and C.A.O for status of 11-5-13 grievance. On 12-6-13 the counselor responded (See exhibit #86) stating "they are forwarded to griev-ance officer". the grievance officer responded on 12-18-13 (See exhibit #87) and stated "havent received emergency medical grievance from you". And the C.A.O never responded to my inquiry at all! , so once again, another one of plaintiff's grievances vanished. Finally on 3-10-14 plaintiff was called to H.C.U after putting in a request (See exhibit #) and for the first time seen/examined by a Med technician named Muldenhauer. This was plaintiff's first big break. After examing plaintiff in the presence of assistant nurse M. Nelson, CMT Muldenhauer immediately said " Oh, this is terrible, you must see Dr. Trost." Plaintiff asked "Who is Dr. Trost?" because the name was unfamiliar to plaintiff. CMT Muldenhauer said "he's a new doctor here at the prison". Plaintiff felt that this would increase his chances of getting effective treatment because for 2 plus years the only doctors he'd seen were defendants #5 and 6 whom were proven to be incompetent and showing deliberate indifference. Two weeks later on 3-24-14 plaintiff was escorted from N2-439 by C/O M. Hanks to the H.C.U to ~~tet~~ be seen and examined by Dr. Trost. As stated earlier in this complaint, and on the attached grievance, literally within SECONDS of examing plaintiff's hem-orrhoid, he IMMEDIATELY told the Sat (Murray) to call whomever necessary because plaintiff "HAD TO GO OUT NOW, HE NEEDS SUR-GERY" IIII. this decision was made by Dr. Trost within SECONDS of examing/seeing this thrombosed/prolapsed hemorrhoid. the exact same thing defendants #5 and 6 have seen for years, yet not only refused to do what Dr. Trost did, which they surely could have, but they also →

Case 3:14-cv-01159-SMY-RJD Document 1 Filed 10/28/14 Page 26 of 29 Page ID #26

continued to just go through the motions of and "constantly prescribing" grievant with ineffective treatment and prohibited pain pills. On 3-24-14 plaintiff was escorted to Chester Memorial Hospital by c/o Krause and c/o LaFonz where he was prepped for surgery and seen/examined by Dr. Vorbich. Plaintiff eventually had surgery performed on 4-4-14 by Dr. Brewer. Plaintiff would like to state all the aforementioned is in support of showing the defendants violated his 8th Amendment right and committed medical malpractice and deliberate indifference. Defendants #5 and 6 and defendants 1,2,3,4 as well. Furthermore, defendants #5 and 6 continued to interfer with plaintiff's medical issues AFTER surgery for his hemorroid. Defendants #5 and 6 gave plaintiff attitude because plaintiff was sent to hospital by Dr. Trost and therefore placing their decision making under question. Three different doctors said that plaintiff MUST implement more fiber in his diet to help condition and prevent it from re-occuring. Two of these doctors (Hinze and Brewer) actually wrote prescriptions for this (See exhibits #92/93) and sent back to the prison H.C.U by officers escorting plaintiff. Additional fiber includes bran cereal, peanut butter, salad, fruits, etc... all things that Menards dietary has. On 3-25-14 Dr. Vorbich of Chester Memorial gave c/o LaFonz & c/o Krause, and plaintiff a copy of recommendations/prevention such as "eat more fiber, high fiber foods like fresh fruit, leafy vegetables, whole grain breads and cereal, especially bran cereal. (See exhibit #89). It was these 2 officers responsibility to get those papers to medical staff, and in turn they were suppose to contact the prisons dietary to place plaintiff on high fiber diet. It never happened. On 3-25-14 plaintiff went back to Chester Memorial Hospital and was seen/examined by Dr. Hinze whom prescribed plaintiff "high fiber diet, Vicodin, and 2 creams (See exhibit #92). When plaintiff arrived back at the prison, he was seen by defendant #5. She viewed the prescriptions from Dr. Hinze and said to plaintiff "You dont need this stuff". When plaintiff began to protest, this is where de- fendant #5 said with attitude "get out of here" then plaintiff was rudely phusically escorted by a c/o (Name unknown). Plaintiff would like to add that he was handcuffed behind the back during this time. Plaintiff →

never received ANY of the things Dr. Ahmed prescribed. On the (21) day of plaintiff's surgery, post surgery nurse Marci at the physican's surgery center gave escourting C/o Koehn a paper instructing plaintiff of post surgery "requirements", one of which was/is "high fiber diet". C/o Koehn assured plaintiff he'd get a copy as instructed by Nurse Marci, for plaintiff's personal records, yet when they arrived back to the prisons H.C.U. C/o Koehn gave it to Nurse Becky and told her plaintiff was to have a copy, yet plaintiff never received it, this was witnessed by a LT. as well (Name unknown, Face is). The following day, 4-5-14 plaintiff was seen by defendant #6, when plaintiff inquired about his high fiber diet which was prescribed by 2 doctors and recommended by post surgery staff, defendant #6 stated "Menard does have peanut butter, bran cereal, fruit, you just wont get it". In order for plaintiff's diet to be activated defendant #5 or 6 had to notify the dietory of this, yet they both continued to intentionally inconvience plaintiff, and blantantly ignore the orders/prescriptions of 2 doctors. When plaintiff went to visit Dr. Brewer on 4-18-14 (operating surgeon) for his post surgery check up, he, Dr. Brewer asked plaintiff "was he eating more fiber?" this was in the presence of C/o Frenchy and C/o Sheilds. When plaintiff explained "Menard staff refuses to give me the high fiber diet or honor doctor's orders", Dr. Brewer told the 2 escourting officers "he, plaintiff, must implement more fiber into his diet". He then wrote plaintiff another prescription for high fiber diet. (See exhibit #64). Plaintiff still hasnt received it. On 4-7-14 when plaintiff spoke to Dr. Trost about this while plaintiff was housed on the 3rd floor of the H.C.U recovering from surgery, he called the dietory about this, but they to interfered with doctors orders and told Dr. Trost that "plaintiff had to change his religion to get a Kosher (fiber) diet." Plaintiff filed a grievance on this on 4-9-14 and has yet to get a response. In addition to the deliberate indifference/medical malpractice, defendant continue to intentionally interfer/sabotage plaintiffs treatment. Jail and prison officials "may not" interfer with or fail to carry out the treatment/orders that a doctor has "PRESCRIBED" for you. This is "exactly" what defendants #5 and #6 did by refusing to give plaintiff prescribed diet, vicodin, and creams forcing →

Plaintiff to suffer more because the post surgery pain medication he was forced to take wasn't effective. Plaintiff is aware that this is a ADA violation on the behalf of the defendants. In closing, plaintiff would like to state that he's attempted to obtain the rest of his medical records, to no avail. As well as the name of the H.C.U administrator after Gail Wells, and the Dietary Supervisor. I now submit this claim to the courts seeking relief requested and justice.

Tyrin N. Smith
# B-78535



V. **REQUEST FOR RELIEF**

State exactly what you want this court to do for you. If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255. Copies of these forms are available from the clerk's office.

$250,000.⁰⁰ in Compensatory, Nominal and Punitive damages for the violation of my Constitutional amed rights, and pain and suffering including, but not limited to all fees incurred such as attorney fees, filing, etc... including any additional amount the court feels

VI. **JURY DEMAND** (*check one box below*)   I'm entitled to.

The plaintiff ☒ does  ☐ does not request a trial by jury.


## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.


Signed on: 10 - 13 - 2014           _Ty N Smith_
         (date)                    Signature of Plaintiff

P.O. Box 1000                      Tyrin N. Smith
   Street Address                      Printed Name

Menard, IL, 62259                  B - 78535
   City, State, Zip                 Prisoner Register Number


_____
   Signature of Attorney (if any)