IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRIN N. SMITH, B78535, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:14-cv-01150-SMY-RJD |
| RICHARD HARRINGTON, GAIL WALLS, ANGELA CRAIN, DR. FE FUENTES, DR. S. NWAOBASI and WEXFORD HEALTH SOURCES, INC., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tyrin Smith is an inmate at Menard Correctional Center ("Menard"), a maximum security prison in the Illinois Department of Corrections ("IDOC"). Smith claims that prison officials at Menard provided him inadequate medical treatment for his severe hemorrhoids. From 2010 through 2014, Smith was examined on multiple occasions at the Menard Health Care Unit ("HCU") for his hemorrhoid related issues. He was finally taken to an outside hospital for surgery in March 2014. Smith asserts that he should have undergone surgery sooner, and that the delay unnecessarily prolonged his pain.

Smith filed suit on October 23, 2014 (Doc. 1). The Complaint was screened pursuant to 28 U.S.C. § 1915A (Doc. 7). In the screening order, Judge Gilbert found that Smith articulated a colorable Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Fe Fuentes (Menard Physician), Dr. S. Nwaobasi (Menard Physician), Gail Walls (Menard Nursing Supervisor), Angela Crain (Menard Health Care Unit Administrator) and Richard Harrington (Menard Warden). Smith subsequently filed an Amended Complaint (Doc. 92)

1

which adds a *Monell* claim against Wexford Health Sources, Inc. ("Wexford"), a private contractor that provides healthcare services to IDOC inmates. Wexford, Dr. Fuentes and Dr. Nwaobasi now seek summary judgment (Doc. 125). The motion is opposed (Docs. 147,148,149). For the following reasons, the motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

Plaintiff Tyrin Smith entered IDOC custody in December 2006 and was transferred to Menard in June 2010 (Smith Deposition, Doc. 148-2, p. 2). Smith first began to experience hemorrhoid problems in late 2009/mid 2010. *Id*. at p. 3. On July 26, 2010, Smith was examined by a Corrections Medical Technician ("CMT") with hemorrhoid related complaints (Doc. 148-7, p. 15). The CMT prescribed Colace, a stool softener, and recommended that Smith apply warm compresses and Dibucaine ointment to the affected area. *Id*. The CMT also counseled Smith on hemorrhoid management (i.e., clean rectal area properly, increase fluid and fiber intake, keep physically active to prevent constipation). *Id*. Smith testified at his deposition that neither the stool softeners nor the Dibucaine ointment provided any relief (Doc. 148-2, p. 3).

Smith's medical records indicate that he was next examined on the gallery (at his cell house as opposed to the health care unit) on December 21, 2010 for continued complaints of hemorrhoids (Doc. 148-7, p. 17). The records note, "inmate states Colace and Dibucaine not work [sic]". *Id*.

On December 29, 2010, Smith was examined by Dr. Fahim in the HCU (Doc. 148-7, p. 18). Dr. Fahim's notes state, "Rectal exam[,] good tone[,] no ext[ernal] hemorrhoid , int[ernal] hemorrhoid at 12:00 o'clock, prostate feels firm[,] one nodule large on left side, guaiac [positive]

[.]" *Id*. Dr. Fahim prescribed Preparation H, Colace and arranged for a follow up prostate ultrasound examination. *Id*.

The hemorrhoid condition was not improving and on February 12, 2011, Smith was examined by a nurse practitioner in the HCU who prescribed an Anusol suppository (Doc. 148-2, p. 5). On March 2, 2011, Smith was examined by Dr. Fuentes who noted that the prostate ultrasound exam was normal, but that Smith was still having problems with hemorrhoids and external hemorrhoids were present (Doc. 148-7, p. 19). Smith was scheduled for another examination on March 22, 2011, but the examination was terminated because he declined to provide the co-pay

The next day, Smith was examined by Dr. Nwaobasi at the asthma "Chronic Clinic" (Doc. 148-1, p. 9). Dr. Nwaobasi treated Smith's asthma, but the two also discussed the hemorrhoid problems (Doc. 148-9). According to Smith, he asked Dr. Nwaobasi if surgery was an option to treat his hemorrhoids and Dr. Nwaobasi told him that he would not be approved for surgery due to security and monetary reasons. *Id.* However, at his deposition, Dr. Nwaobasi denied that this conversation took place. *Id*.

After several examinations for unrelated medical issues a CMT's notes from June 14, 2011 state that Smith needed a renewal of his prescriptions for suppositories, Colace and Dibucaine (Doc. 126-3, p. 18). Dr. Nwaobasi examined Smith on June 18, 2011 and renewed the hemorrhoid medications (Doc. 126-3, p. 19). Dr. Nwaobasi noted, "[History] of external prolapsed hemorrhoids. Needs the medications for his hemorrhoids." *Id*.

On July 25, 2011, Dr. Fahim examined Smith for his hemorrhoid related complaints and issued prescriptions for Preparation H and Colace (Doc. 126-3, p. 20). Smith was examined by a CMT for a renewal of his prescriptions on October 17, 2011 (Doc. 126-3, p. 25).

Smith returned to the HCU for an examination by Dr. Fuentes on November 2, 2011 (Doc. 126-3, p. 27). Dr. Fuentes states in her notes that Smith was "complaining of hemorrhoids for 1 ½ years, noticed prolapsing of hemorrhoids [illegible] [with] occ. bleeding." *Id*. She performed a rectal examination and diagnosed Smith as having external hemorrhoids. *Id*. At the conclusion of the examination, Dr. Fuentes prescribed hot sitz baths, Anusol suppositories and Colace. *Id*. She also directed Smith to exercise more and to increase his water and fiber intake. *Id*.

On November 16, 2011, Smith was again examined by Dr. Fuentes for hemorrhoid issues (Doc. 126-3, p. 28). Smith complained that he could feel the hemorrhoids when he strained in the bathroom. *Id*. Dr. Fuentes did not observe any external hemorrhoids, but prescribed Anusol suppositories and Colace. *Id*. Smith returned to the HCU for another examination with Dr. Fuentes on December 14, 2011 (Doc. 126-3, p. 30). Dr. Fuentes performed a rectal examination and observed an external hemorrhoid. *Id*. Smith told Dr. Fuentes that he would like to have surgery to correct the problem, but she told him that his hemorrhoids could be treated with suppositories. *Id*.

Due to prison security issues, Smith was unable to be seen for a follow up examination until January 24, 2012 (Doc. 126-3, pp. 31-32). On that date, Smith was examined by Nurse Practitioner Pollion (Doc. 126-3, pp. 32). He told Nurse Pollion that he was still experiencing some bleeding and that the hemorrhoids protruded during bowel movements. *Id*. Nurse Pollion directed Smith to "continue Colace" and arranged for lab work. *Id*. Smith spoke to a nurse on February 23, 2012 and requested a renewal of his medications (Doc. 126-3, p. 34).

Smith was re-examined by Nurse Pollion on February 29, 2012. *Id*. Pollion noted that Smith has a "[history] of prolapsed hemorrhoids" and "still wants surgery to fix problem." *Id*.

4

She also renewed his prescriptions for Colace and Dibucaine. *Id*. Smith spoke to a CMT regarding his hemorrhoid problems on June 26, 2012 (Doc. 126-4, p. 4). According to the CMT's notes, Smith was not examined on that date. *Id*.

Smith injured his back and neck in early January 2013 (Doc. 126-4, p. 9). He was examined in the HCU by Dr. Nwaobasi for back related pain on January 23, 2013 and May 15, 2013 (Doc. 126-4, p. 10, 14). Dr. Nwaobasi prescribed Motrin (ibuprofen), Neurontin and Robaxin (a muscle relaxant). *Id*.

On August 17, 2013, Smith was examined by a CMT on the gallery for hemorrhoid related issues (Doc. 126-4, p. 18). Smith complained that the hemorrhoids were protruding from his rectum. *Id*. He also complained of severe pain and bleeding. *Id*. The CMT arranged for Smith to be seen at the HCU and on August 26, 2013, he was examined by a Nurse Practitioner (Doc. 126-4, p. 19). Smith told the Nurse Practitioner that he suffered from "long term" hemorrhoids that were at times prolapsed and that he would like treatment to have them removed. *Id*. The Nurse Practitioner prescribed Anusol suppositories, Dibucaine and referred him to see Dr. Shearing. *Id*.

Smith was examined by Dr. Shearing on September 6, 2013 (Doc. 126-4, p. 20). Dr. Shearing's notes state that Smith had experienced hemorrhoids for the past three years and that Smith "wants surgery[.]" *Id*. Dr. Shearing diagnosed "chronic mild hemorrhoids," noted that there was no need for surgery and recommended Smith "continue current meds." *Id*.

After several examinations unrelated to hemorrhoids (asthma related exams on October 8, 2013 and February 11, 2013 and a cold exam on February 26, 2014), Smith was seen by a CMT on February 16, 2014, complaining of severe pain, bleeding and protruding hemorrhoids (Doc. 126-4, p. 25). The CMT referred Smith for a follow up examination, and on March 10, 2014,

Smith was examined by Nurse Practitioner Moldenhauer (Doc. 126-4, p. 26). Nurse Moldenhauer observed a "protruding hemorrhoid" and issued prescriptions for Dibucaine, Anusol, Colace and Tylenol. *Id*. Nurse Moldenhauer also issued a referral to Dr. Trost "ASAP." *Id*. On March 18, 2014, Moldenhauer renewed Smith's prescriptions and scheduled him to be seen by Dr. Trost (Doc. 126-4, p. 27).

Smith was examined by Dr. Trost on March 24, 2014 (Doc. 126-4, p. 28). According to Dr. Trost's notes from the examination, he observed "painful looking, large, thrombosed, prolapsed hemorrhoid, bleeding … Will transfer for emergent care" (Doc. 126-4, p. 28). Smith was taken to Chester Memorial Hospital later that day (Doc. 148-2, p. 9). Upon arrival, the staff prepped Smith for surgery. *Id*. However, it was decided that Smith should not undergo surgery that day, and he was taken back to the Menard HCU. *Id*.

Smith stayed in the HCU that night and was driven back to Chester Memorial Hospital the next day (March 25, 2014). *Id*. At Chester Memorial, Smith was examined by Dr. Scott Hinze (Doc. 148-5, p. 16). Dr. Hinze's notes state:

> On exam today I performed a rectal exam and he has several large engorged hemorrhoidal cushions with corresponding inflammation. At this point in time I am going to start him on Analpram, Hydrocortison cream at 2.5%, Pramoxine cream 1 % applied four times per day, high fiber diet of around 50 grams per day and Vicodin 325 one to two po q. four hours prn pain [sic]. Follow up in the office in one week. If this doesn't start to get better, we will may [sic] just have to end up looking at going to surgical excision in an effort to control his symptoms.

*Id*. In an affidavit attached to Smith's response to the instant motion, Dr. Hinze states, "Mr. Smith's hemorrhoid condition on March 25, 2014, was one of the worst conditions of

hemorrhoids I have seen during my career as a doctor [and] I have treated around 100 cases of hemorrhoids [.]" (Doc. 148-4, p. 1).

When Smith returned to Menard, Dr. Fuentes informed him that she was not going to fill the prescriptions issued by Dr. Hinze (Doc. 148-2, p. 9). As a result, Smith did not receive the special high fiber diet, cream or Vicodin prescribed by Dr. Hinze. *Id*.

During her deposition, Dr. Fuentes testified that she did not issue the prescriptions, stating "[w]hen we have prescriptions that we receive from another – from a medical furlough, it doesn't necessarily mean we have to follow all of it. Based on our discretion, we prescribe medications that we think will be almost similar to what they have – what the physician has prescribed." (Doc. 148-7, p. 9). Dr. Fuentes also testified that Vicodin was not available at Menard and that she prescribed Tylenol instead. *Id.* However, Dr. Trost testified that Vicodin was in fact available (Doc. 148-3, p. 11).

Dr. Trost noted in the medical files that on March 27, 2014, the Wexford "Collegial Review" approved Smith for a hemorrhoidectomy (hemorrhoid removal) (Doc. 126-4, p. 36). On April 2, 2014, Smith was escorted from Menard to Murphysboro, Illinois to be examined by Dr. Robert Brewer (Doc. 148-5, p. 20). Dr. Brewer noted that other than the hemorrhoids and a previous gunshot wound, Smith was generally healthy. *Id*. Dr. Brewer examined Smith and scheduled the hemorrhoidectomy (Doc. 148-5, p. 22). Nurse Moldenhauer examined Smith later that day when he returned to Menard (Doc. 126-4, p. 25).

The hemorrhoidectomy was performed on April 4, 2014, by Dr. Brewer (Doc. 148-5, pp. 25-27). Smith was placed under a general anesthetic and an "extremely prominent prolapsed hemorrhoid on the right anterior area" was removed (Doc. 148-5, p. 30). Three other less prominent hemorrhoids were also removed. *Id*. The hemorrhoid tissue was sent to a pathologist

for biopsy and the pathologist concluded that "[t]here is no evidence of malignancy" (Doc. 148-5, p. 31).

The day after the surgery, Smith was examined by Dr. Nwaobasi (Doc. 126-4, p. 39). Dr. Nwaobasi arranged for Smith to be admitted to the third floor of the HCU and prescribed suppositories, Colace and Tylenol #3. *Id*. After three days of Tylenol #3, Smith was to receive Motrin. *Id*. Smith testified at his deposition that he was sore for a month or so after the surgery, but has felt fine since June 2014 (Doc. 148-2, p. 13).

## DISCUSSION

Pursuant *F.R.C.P.* 56, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). However, to survive summary judgment, "the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing*, LLC, 839 F.3d 583, 591 (7th Cir. 2016) (*quoting Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015)).

The Supreme Court has held that prisoners have an Eighth Amendment right to "adequate food, clothing, shelter, and medical care[.]" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). As such, the "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (internal cite and quote omitted).

To prove an Eighth Amendment claim that prison officials provided inadequate medical care, a plaintiff must demonstrate: (1) that he suffered from a serious medical need; and (2) that the defendants were deliberately indifferent to it. *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

"Deliberate indifference" is a state of mind in which the prison official defendant "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. It is a higher level of wrongdoing than ordinary negligence. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("[d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts"). Deliberate indifference may be established by evidence that the defendant chose a "blatantly inappropriate" course of treatment or one that unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016).

### *Dr. Fuentes and Dr. Nwaobasi*

Here, there can be no question but that Smith's hemorrhoidal condition was an objectively serious condition. The only question is whether these defendants were deliberately indifferent to it. Drs. Fuentes and Nwaobasi both treated Smith and noted external hemorrhoids on examination. Additionally, they were both aware of the prolonged nature of Smith's condition and his persistent complaints of pain. Nevertheless, they failed to refer Smith for surgery or further evaluation. Although these physicians last examined Smith approximately 2 years before his surgery in 2014, whether the treatment course each chose unnecessarily

9

prolonged Smith's pain and was "blatantly inappropriate" is a question of fact for the jury. Therefore, summary judgment shall be **DENIED** as to Dr. Fuentes and Dr. Nwaobasi.[1]

*The Wexford Monell Claim*

Pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, local governmental units (such as municipalities or counties) may be subject to § 1983 liability if the alleged constitutional deprivation was the result of an unconstitutional policy or custom. 436 U.S. 658, 690, 98 S. Ct. 2018, 2035–36, 56 L. Ed. 2d 611 (1978). The Supreme Court's holding in *Monell* has been expanded so that § 1983 claims may be brought against private corporations and their employees based on an unconstitutional corporate policy or custom. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014). Moreover, as the Seventh Circuit recently noted, "[t]he critical question under *Monell*, … is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

Here, Smith asserts that Wexford has a policy or custom of emphasizing cost of care over quality of care, and that this resulted in the delay in receiving the hemorrhoidectomy. However Smith provides scant evidence that such a policy or custom exists. He merely notes that on one occasion, Dr. Nwaobasi told him that he would not receive surgery due to "security and monetary reasons." But in order to establish a *Monell* claim against a correction facility's healthcare provider, a plaintiff must present sufficient evidence so that a "trier of fact could find systemic and gross deficiencies in staffing, facilities, equipment, or procedures in a detention center's medical care system." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (internal quote omitted).

---

[1] These two Defendants also argue that they are entitled to qualified immunity, but qualified immunity is inapplicable to private prison employees in § 1983 actions. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 794 (7th Cir. 2014).

Smith has not made such a showing. "A mere scintilla of evidence is not enough to require the submission of an issue to the jury." *Gunning v. Cooley*, 281 U.S. 90, 94, 50 S. Ct. 231, 233, 74 L. Ed. 720 (1930). Dr. Nwaobasi's isolated remark provides an insufficient evidentiary basis upon which to present the *Monell* claim to a jury. Rather, the evidence in the record indicates that the decision not to perform the hemorrhoidectomy sooner was the result of the individual decision makers at Menard, and not a Wexford corporate policy or custom prioritizing cost over care. Thus, summary judgment shall be **GRANTED** in favor of Wexford.

**IT IS SO ORDERED.**

**DATED: June 2, 2017**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**